IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNA ENTERTAINMENT CORP., and XPRESSBET, INC.<br><br>Plaintiffs,<br><br>v.<br><br>INTERNET OPPORTUNITY ENTERTAINMENT LIMITED,<br><br>Defendant. | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs MAGNA ENTERTAINMENT CORP. and XPRESSBET, INC., by and through their undersigned counsel, complain and allege, upon information and belief, except to those paragraphs applicable to itself, which are based upon personal knowledge, against the Defendant INTERNET OPPORTUNITY ENTERTAINMENT LIMITED as follows:

### PARTIES

1.  Plaintiff MAGNA ENTERTAINMENT CORP. ("MEC") is a Delaware corporation having its principal place of business at 337 Magna Drive Aurora, Ontario CANADA L4G 7K1. MEC is an innovator and industry leader in owning and operating horse racetracks. Based on revenues, MEC is one of the world's leading suppliers, via simulcasting, of live racing content to the growing inter-track, off-track and account wagering markets. MEC owns the trademarks XPRESSBET®, XPRESSBET (design) and XPRESSBET ANYTIME …FROM ANYWHERE, found at www.XPRESSBET.com.

2.  Plaintiff XpressBet, Inc. ("XpressBet") is a Delaware corporation having its principal place of business at 200 Racetrack Road, Building 26 Washington, PA 15301.

XpressBet, Inc. owns and operates the website WWW.XPRESSBET.COM ("XPRESSBET.com"), and at all times material to this complaint, XpressBet, Inc. was the sole and exclusive licensee of the XPRESSBET trademarks owned by MEC, which controlled the nature and quality of the services offered under the XPRESSBET trademarks. XPRESSBET.com permits customers to legally place wagers by telephone and over the Internet on horse races at over 100 North American racetracks and internationally on races in Australia, South Africa and Dubai. XpressBet and its wagering portal have a tradition of excellence and reliability, providing the highest quality dependable pari-mutuel wagering and entertainment services.

3. Defendant INTERNET OPPORTUNITY ENTERTAINMENT LIMITED a/k/a INTERNET OPPORTUNITY ENTERTAINMENT (SPORTS) LIMITED ("IOE") is an on-line gaming company that has a place of business at Lower Factory Rd, St. Johns, Antigua and Barbuda A1 AG. On information and belief, IOE operates or is otherwise affiliated with over two dozen internet gambling sites in 30 different markets across Europe, Australia, and South America. IOE offers a range of internet gambling products, including a sportsbook product and casino, poker and virtual games, most, if not all of which are illegal in the United States.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as it arises under Acts of Congress related to trademarks. Additionally, the Court has subject matter jurisdiction over the Plaintiffs federal trademark infringement claim pursuant to 15 U.S.C. § 1121. The Court has subject matter jurisdiction the common law trademark infringement claim and the state law unfair competition claim pursuant to 28 U.S.C. § 1367, as the facts giving rise to the claims arise from the same common nucleus of operative

facts as the federal statutory claims. Plaintiffs are seeking injunctive and declaratory relief and damages with respect to the claims presented in this complaint.

5. This Court has personal jurisdiction over IOE as it has purposefully availed itself of this judicial district through its website, www.expressbet.com, which advertised, displayed, and offered for sale sports betting services which were confusingly similar and/or identical to the pari-mutuel wagering services of XpressBet on its XPRESSBET website. On information and belief, IOE has promoted and has in fact sold its products and services to customers in this judicial district by way of its websites. IOE has knowingly caused an effect in this judicial district through unconsented use of MEC's federally registered trademarks

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as, upon information and belief, IOE has committed acts of infringement in this judicial district.

## FACTUAL ALLEGATIONS

7. Plaintiff XpressBet is the owner of the internet pari-mutuel gaming website XPRESSBET.com through which it conducts its legal wagering business. XpressBet has operated the well-known and highly regarded website since at least 2002 and has conducted business throughout the United States and internationally, in matters relating to internet pari-mutuel wagering. XpressBet registered the domain name "XPRESSBET.com" on November 21, 2001. Attached as Exhibit 4 are representative web pages from the website of XPRESSBET.com.

8. MEC is the owner of United States Trademark Reg. Nos. 2,804,067 for XPRESSBET; 2,804,068 for XPRESSBET (stylized) and 2,824,401 for XPRESSBET ANYTIME ...FROM ANYWHERE used in connection with "parimutuel wagering services, namely on-line, Internet and electronic advance deposit and pre-paid account wagering, telephone and television advance deposit and pre-paid account wagering, off-track and on-track

wagering, all offered solely through Applicant's exclusive network", in International Class 36.; MEC is also the owner of the trademarks XPRESSBET, XPRESSBET (design) and XPRESSBET ANYTIME …FROM ANYWHERE. Plaintiff MEC has been using the marks XPRESSBET, XPRESSBET (design) and XPRESSBET ANYTIME …FROM ANYWHERE in commerce in connection with legislatively permissible online and/or legalized internet pari-mutuel wagering services offered solely through its exclusive networks in the United States since at least as early as 2002 (collectively, the "XPRESSBET trademarks" or "XPRESSBET marks").

9. Attached as Exhibit 3 are true and correct copies of the certificates of registration of each of the XPRESSBET marks.

10. The certificates of registration contained in Exhibit 3 are prima facie evidence of the validity of the XPRESSBET marks, of MEC's ownership of the XPRESSBET marks, and of MEC's exclusive right to use the marks with "parimutuel wagering services, namely on-line, Internet and electronic advance deposit and pre-paid account wagering, telephone and television advance deposit and pre-paid account wagering, off-track and on-track wagering," pursuant to 15 U.S.C. § 1115(a), as well as constructive notice of MEC's claim of ownership of the XPRESSBET marks under 15 U.S.C. § 1072.

11. Each of the XPRESSBET marks is incontestable, which is conclusive evidence of their validity under 15 U.S.C. § 1115(b).

12. MEC maintains strict control over the XPRESSBET marks. The XPRESSBET marks are used solely by XpressBet with the express consent and permission of MEC.

13. The domain name "XPRESSBET.COM," owned by XpressBet, incorporates MEC's XPRESSBET trademarks and is the only website where the XPRESSBET trademarks are

prominently displayed and are used in connection with pari-mutuel wagering is XPRESSBET.com.

14. The advertising and promotion of the XPRESSBET marks since their registration has caused the public to recognize the XPRESSBET marks as an indicator of quality services, and to seek out and use XpressBet's services rather than those of other providers.

15. The XPRESSBET marks have become and are associated solely and exclusively with XpressBet in the minds of consumers seeking pari-mutuel wagering services.

16. IOE is the record owner of the domain name website www.expressbet.com (the "Domain Name"). From about April 2004 until October 13, 2006 the Domain Name had promoted illegal on-line gaming and/or gambling services throughout the world, including, specifically, to residents of the United States and, upon information and belief, residents of this judicial district.

17. Upon information and belief, IOE appears to have acquired the Domain Name on or about October 12, 1998.

18. Upon information and belief, and according to the records of the website Internet Archive, IOE did not conduct any commercial activity relating to internet gambling or gaming at the Domain Name until or about April 1, 2004, which is well after XpressBet's first use of the XPRESSBET trademarks, as authorized and consented to by MEC. Thereafter IOE's Domain Name provided, directly and indirectly, links to illegal on-line gaming and gambling. Attached as Exhibit 1, is the record printout of http://web.archive.org/web/*/http://www.expressbet.com.

19. MEC sent a cease-and-desist letter to IOE on September 17, 2008. The letter advised IOE, *inter alia*, that resumption of online gaming and/or gambling activities for U.S. residents would be illegal and would also create a likelihood of confusion and would constitute

trademark infringement of the XPRESSBET marks. MEC received no response to its letter. Attached as Exhibit 2 is a copy of the letter sent by MEC.

20. At present, the Domain Name appears to be inactive but it is still owned by IOE.

## CLAIM I
## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS
## (15 U.S.C. § 1114(1))

21. Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 through 20 above, as if fully set forth herein.

22. XpressBet has been using the XPRESSBET marks in connection with the aforementioned services since at least as early as 2002. XpressBet has spent substantial amounts of money over the last 7 years in advertising and marketing expenses relating to its services and the XPRESSBET marks, and has spent considerable time and money building up goodwill and strengthening the XPRESSBET marks. Accordingly, as a result of XpressBet's consistent and widespread use of the XPRESSBET marks, the expenditure of considerable time, resources and effort, and as a result of the quality of its services, the XPRESSBET marks have become well known and represent substantial goodwill of XpressBet.

23. The Domain Name, "expressbet.com," is virtually identical to XPRESSBET.com and the XPRESSBET marks owned by MEC and used by XpressBet. The only difference between the Domain Name and the XPRESSBET marks is the letter "e" preceding the letter "x" in the Domain Name. In fact, removal of the "e" from the Domain Name, "expressbet.com" creates a domain name identical to XpressBet's registered domain name, "XPRESSBET.com." Moreover, with or without the leading letter "e", the Domain Name is the exact phonetic equivalent of MEC's XPRESSBET marks and XpressBet's domain name. The use of the EXPRESSBET mark in connection with IOE's illegal on-line gambling and gaming creates a

likelihood of confusion with the XPRESSBET trademarks and XpressBet's legitimate pari-mutuel wagering services.

24. Neither MEC nor XpressBet have control over the composition or quality of the goods sold under the confusingly similar marks by IOE. As a result, to the extent IOE services are inferior to those provided at XPRESSBET.com, XpressBet's valuable goodwill, developed at great expense and effort by XpressBet, is being harmed by IOE's unauthorized use of the confusingly similar mark, and is at risk of further damage.

25. The goodwill of XpressBet's business under the XPRESSBET marks is of enormous value, and MEC and XpressBet are suffering and will continue to suffer immediate and irreparable harm should IOE's infringement be allowed to resume and/or continue to the detriment of the Plaintiffs' reputation and goodwill.

26. IOE has no legitimate interest in using the term "expressbet" or the Domain Name. IOE is not affiliated with MEC, XpressBet, their affiliates, or any other business concern claiming any interest in the term "XPRESSBET", "expressbet," or its phonetic equivalents or its indistinguishable variations. Furthermore, IOE is not known by the name "expressbet" but rather by the names "HorseBook.com", "SportsBets" or "Internet Opportunity Entertainment Ltd." under which names it conducts business.

27. Upon information and belief, IOE used the EXPRESSBET.com Domain Name in bad faith as evidenced by the adoption and use of a trademark confusingly similar to the well-known XPRESSBET trademarks long after MEC's trademark was used and/or registered, and confusingly similar to XpressBet's website, XPRESSBET.com. Specifically, IOE used the expressbet.com Domain Name approximately 3 years after XpressBet began use.

RLF1-3407525-2

28. Upon information and belief, MEC and XpressBet aver that, at all times relevant to this action, including when IOE first adopted the "expressbet" Domain Name, IOE knew of XpressBet's prior adoption and widespread commercial use of the XPRESSBET marks and MEC's U.S. Trademark Registrations in connection with on-line and internet pari-mutuel wagering services, including all of the services specified in MEC's federally registered trademarks listed above. IOE's infringement of MEC's marks, and XpressBet's exclusive use of the XPRESSBET marks, is therefore willful, knowing, and deliberate.

29. Upon information and belief, the acts of IOE in its unauthorized use of the XPRESSBET marks (or marks confusingly similar thereto) as a trademark in connection with online gaming and gambling are intended to and will divert Internet users to a website featuring links to services relating to illegal internet gaming and gambling, and presumably IOE has profited from diverting such Internet traffic to its related websites thereby creating a likelihood of confusion for its own commercial gain. Such acts will confuse and have confused potential users of XPRESSBET.com into thinking that Defendant IOE and/or its representatives are offering services that are somehow backed by, underwritten by, licensed by, endorsed by, sponsored by, or affiliated with XPRESSBET.com and XpressBet's exclusive use of the XPRESSBET marks. Such acts are further evidence of bad faith.

30. In light of the fact that XpressBet has made widespread and long-standing use of the XPRESSBET marks throughout the United States, dating back to 2002, IOE knew or should have known of XpressBet's rights in the XPRESSBET marks and this refusal to recognize or acknowledge the rights of a trademark owner is further evidence of bad faith, which has resulted in actual confusion and negative sentiment by disgruntled IOE customers as to the source or

origin of services being offered by XpressBet. As evidence of such confusion, attached as Exhibit 5 is the Affidavit of Gene Chabrier.

31. IOE's conduct complained of herein is in violation of 15 U.S.C. § 1114(1).

32. XpressBet has sustained damages as a result of IOE's conduct complained of herein. IOE's infringement is at risk of resuming and/or continuing thereby causing further irreparable harm to XpressBet unless enjoined by this Court.

33. XpressBet is entitled to a permanent injunction against Defendant IOE as well as all other remedies available under 15 U.S.C. § 1114, including, but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## CLAIM II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

34. Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 through 33 above, as if fully set forth herein.

35. XpressBet uses the XPRESSBET trademarks throughout the United States in connection with XpressBet's legal on-line, internet and telephone pari-mutuel wagering services.

36. MEC's XPRESSBET trademarks are distinctive and distinguish XpressBet's services from those of its competitors.

37. MEC's XPRESSBET trademarks are strong in light of the substantial marketing and promotion of XpressBet's XPRESSBET.com services and, over the past seven years, the substantial sales volume of XpressBet's services, their critical acclaim, and widespread public recognition.

38. The Domain Name, "expressbet.com," is virtually identical to XPRESSBET.com and the XPRESSBET marks and U.S. Trademark Registrations owned by MEC. The only

difference between the Domain Name and MEC's XPRESSBET marks is the letter "e" preceding the letter "x" in the Domain Name. In fact, removal of the "e" from the Domain Name, "expressbet.com" creates a domain name identical to MEC's registered domain name, "XPRESSBET.com." Moreover, with or without the leading letter "e", the Domain Name is the exact phonetic equivalent of MEC's XPRESSBET marks and domain name. The use of the EXPRESSBET trademark in connection with IOE's illegal on-line gambling and gaming creates a likelihood of confusion with MEC's trademarks.

39. IOE's use of the XPRESSBET marks (or marks confusingly similar thereto) in connection with its offering of on-line gaming and gambling falsely represents that such services originate with, are sponsored, endorsed, underwritten, or licensed by MEC or XpressBet.

40. Neither MEC nor XpressBet have control over the composition or quality of the goods sold under the confusingly similar marks by IOE. As a result, to the extent IOE services are inferior to XpressBet's, XpressBet's valuable goodwill, developed at great expense and effort by XpressBet, has been harmed by IOE's unauthorized use of the confusingly similar mark, and is at risk of further damage if left unabated.

41. Upon information and belief, IOE's false designation of origin has been willful and deliberate, and designed specifically to trade upon the consumer goodwill enjoyed by XpressBet among consumers and users of on-line, internet and telephone pari-mutuel wagering services.

42. The goodwill of XpressBet's business under the XPRESSBET marks is of enormous value, and XpressBet will suffer irreparable harm should IOE's infringement be allowed to resume and/or continue to the detriment of XpressBet's reputation and goodwill.

RLF1-3407525-2

43. IOE's conduct complained of herein is in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

44. XpressBet has sustained damages as a result of IOE's conduct complained of herein. IOE's infringement is at risk of resuming and causing further, irreparable harm to XpressBet unless enjoined by this Court.

## CLAIM III
## VIOLATION OF THE ANTICYBERSQUATTING
## CONSUMER PROTECTION ACT (15 U.S.C. 1125(d))

45. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 44 above, as if fully set forth herein.

46. IOE registered the www.expressbet.com Domain Name on or about October 12, 1998. However, according to the records of the website Internet Archive, IOE did not conduct any commercial activity at the Domain Name until or about April 1, 2004, -- well after XpressBet's first use of the XPRESSBET trademarks, as authorized by MEC.

47. Upon information and belief, IOE began internet activity at the Domain Name in an obvious effort to create confusion as to the source, sponsorship, affiliation or endorsement of IOE's services and to benefit from the value created by XpressBet's authorized use of the XPRESSBET marks. Notably, the printout of the website for the expressbet Domain Name prominently displays "HORSEBOOK.COM" at the top of the home page and, more importantly, promotes services relating to on-line gaming and gambling activities notably related to horse racing, which falsely implies sponsorship by or a strong affiliation with MEC. IOE's activity at the Domain Name and current operation at the expressbet.com website has been, and continues to be, without the consent or authorization of either MEC or XpressBet.

RLF1-3407525-2

48. Such similarity and likelihood of confusion is further evidence of IOE's lack of legitimate interest in the Domain Name and IOE merely laid in wait for the opportunity to ride XpressBet's coat tails and adopt similar subject matter for its web content.

49. IOE's Domain Name www.expressbet.com encompasses the XPRESSBET mark in its entirety, and uses nearly identical content to further cause confusion with XPRESSBET.com.

50. Upon information and belief, XpressBet avers that, at all times relevant to this action, including when IOE first used the www.expressbet.com Domain Name, IOE knew of XpressBet's prior adoption and widespread commercial use of the XPRESSBET trademarks in connection with internet and on-line wagering services, including all of the services specified in MEC's federally registered trademarks listed above.

51. IOE's use and promotion of the www.expressbet.com Domain Name therefore shows its bad faith intent to profit from the XPRESSBET marks and XpressBet's authorized use of the XPRESSBET marks.

52. As further evidence of bad faith, on the www.expressbet.com webpage, IOE used content similar to that of XpressBet's. The webpage then automatically resolves and/or had links to IOE's other and/or related websites at www.sportsbet.com and/or www.horsebook.com where IOE promoted other gambling sites it owns that are illegal in the United States. IOE was therefore making no bona fide noncommercial or fair use of XpressBet's use of the XPRESSBET trademarks in connection with the www.expressbet.com Domain Name and website, other than to divert legitimate customers away from XpressBet's lawful pari-mutuel wagering services.

RLF1-3407525-2

53. IOE used the Domain Name to divert Internet users to a website featuring links to services relating to illegal internet gaming and gambling, and presumably profited from diverting such Internet traffic to its related websites. IOE therefore created a likelihood of confusion for its own commercial gain, in further evidence of IOE's bad faith.

54. The bad faith intent of IOE to use and profit from the www.expressbet.com Domain Name will resume and/or continue unless IOE is required to forfeit, cancel, or transfer the domain name to XpressBet.

55. IOE's conduct complained of herein constitutes cybersquatting in violation of 11 U.S.C. § 1125(d). Such conduct entitles XpressBet to permanent injunctive relief and statutory damages in an amount up to $100,000, pursuant to 15 U.S.C. § 1117(d).

### CLAIM IV
### COMMON LAW TRADEMARK INFRINGEMENT

56. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 55 above, as if fully set forth herein.

57. MEC owns and uses its XPRESSBET trademarks or formatives thereof, and enjoys common law rights in the trademark in Delaware and throughout the United States in connection with on-line and internet pari-mutuel wagering services. Such rights are senior and superior to any rights which IOE may claim in and to its infringing mark.

58. IOE has never been authorized by MEC or XpressBet to use the XPRESSBET marks, and MEC has notified IOE that IOE is not authorized to use the XPRESSBET marks.

59. IOE's use of the confusingly similar EXPRESSBET mark, or formatives thereof, in commerce is intentionally designed to mimic the XPRESSBET trademark for similar services so as to likely cause confusion regarding the source of IOE's services, in that purchasers will be

likely to associate, and in fact have associated, such services with, as originating with, or as approved by MEC or XpressBet, to the detriment of MEC and XpressBet.

60. MEC and XpressBet have sustained damages as a result of IOE's conduct complained of herein. IOE's infringement has caused and shall continue to cause irreparable harm to MEC's and XpressBet's valuable goodwill and reputation unless IOE is enjoined.

## CLAIM V
## UNFAIR COMPETITION UNDER STATE LAW
## (DELAWARE DECEPTIVE TRADE PRACTICES ACT ("DTPA"))

61. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 60 above, as if fully set forth herein.

62. MEC's XPRESSBET trademarks and trademark registrations are wholly associated with MEC due to its extensive use of the marks and, as such, MEC is deserving of having its marks adequately protected with respect to the conduct of its business. MEC maintains strict control over the XPRESSBET marks, and has provided its express consent and permission to XpressBet for sole use of the XPRESSBET marks.

63. IOE's use of a domain name that is confusingly similar to MEC's XPRESSBET trademarks and trademark registrations and the XpressBet website constitutes unfair competition in that customers and would-be customers are likely to be confused and have already been confused concerning the origin of services using similar marks in the marketplace and false designations concerning the origin of the XPRESSBET services.

64. IOE's acts complained of herein constitute unfair competition in violation of 6 *Del. C.* § 2532.

65. MEC and XpressBet aver that the acts of unfair competition undertaken by IOE were intentionally and knowingly undertaken and were directed toward perpetuating a business

competing unfairly with XpressBet and were done in bad faith and with a willful disregard for the rights of MEC and XpressBet.

66. By reason of IOE's acts of unfair competition, MEC and XpressBet have suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining IOE from any further acts of unfair competition. IOE's continuing acts of unfair competition, unless enjoined, will cause irreparable damage to MEC and XpressBet in that it will have no adequate remedy at law to compel IOE to cease such acts.

67. In doing the acts alleged, IOE acted in bad faith, fraudulently, oppressively, and maliciously, and, as such, Plaintiffs are entitled to exemplary and punitive damages.

68. Plaintiffs are entitled to statutory damages in an amount that is "treble the amount of damages actually proved" under 6 *Del. C.* § 2533.

**WHEREFORE**, Plaintiffs respectfully request that:

    a. Judgment be entered that the Defendant violated the rights of Plaintiffs in the distinctive and valuable XPRESSBET trademarks.

    b. Defendant, its agents, franchisees, licensees, servants, representatives, employees, attorneys, successors and assigns, and all those in active concert or participation with any of them who receive notice of such judgment directly or otherwise, be preliminarily and permanently enjoined from infringing the XPRESSBET trademarks, whether or not registered, from falsely designating the origin, sponsorship of or affiliation of their business or services, from unfairly competing with Plaintiff, from diluting the distinctive quality of the XPRESSBET trademarks and specifically:

        i. Imitating, copying, using, reproducing, displaying, maintaining on any internet domain name or website, or authorizing or permitting any third party to imitate,

copy, use, reproduce or display, the XPRESSBET trademarks or any copies, simulations, variations or colorable imitations thereof on or in connection with the offering of any goods, services, information or data via computer network or otherwise, including making any use, threatening to use, claiming ownership of or registering or procuring "expressbet.com" as an address or using it on the Internet, or otherwise;

        ii.    Using, authorizing, maintaining or making available for use or aiding in any way any third party to use or copy the XPRESSBET trademarks, or from otherwise infringing the XPRESSBET trademarks;

        iii.    Using any trademark, trade name, logo, business name, computer address or other identifier or acting in any fashion which may be calculated to falsely represent that the services provided, promoted or offered by Defendant are sponsored by, authorized by, licensed by, or in any other way associated with Plaintiff;

        iv.    Diluting the distinctive quality of the XPRESSBET marks, including the unauthorized licensing thereof; and

        v.    Aiding, assisting or abetting any other party in doing any act prohibited by sub-paragraphs 'i' through 'iv' above.

    c.    Defendant be directed to delete from its computer files, menus, hard drives, diskettes and backups, and deliver up to Plaintiffs all materials incorporating or bearing the XPRESSBET trademarks or the mark or name "expressbet.com" or any copies, simulations, variations or colorable imitations thereof.

    d.    Defendant be directed to immediately cease use and threatening to use, and claiming ownership of the www.expressbet.com domain on the Internet and that they forfeit or otherwise give up any registrations, claims and any other interests allowing Defendant to use

RLF1-3407525-2

or claim rights to use the "www.expressbet.com" address or any other address incorporating "expressbet" or otherwise assign or turn such address or registrations therefore over to Plaintiffs.

  e. Defendant be directed to file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of Judgment a report in writing under Oath setting forth in detail the manner and form in which the Defendant have complied with the requirements of the Injunction and Order.

  f. Defendant be directed to take such other and further actions as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any goods or services provided by or promoted by Defendant are authorized by Plaintiffs or related in any way to Plaintiff, its products or their services.

  g. Plaintiffs be awarded:

    i. All of the Defendant's profits, gains and advantages derived from the unauthorized use of the Marks or any imitation or simulation thereof and that such sums be trebled pursuant to 15 U.S.C. § 1117;

    ii. All damages sustained by Plaintiffs by reason of Defendant's acts of trademark infringement and unfair competition and that such damages be trebled pursuant to 15 U.S.C. § 1117;

    iii. All damages sustained by Plaintiffs, by reason of Defendant's usurpation of Plaintiffs' corporate opportunity,

    iv. Exemplary and punitive damages as the court finds appropriate to deter any future willful conduct, and

    v. Interest, including prejudgment and post-judgment interest, on the foregoing sums.

RLF1-3407525-2

   h. Plaintiffs be awarded its attorneys fees and costs incurred by reason of Defendant's violations.

   i. Plaintiffs be awarded such other and further relief as the Court may deem just and appropriate to prevent the Defendant from participating in this or other patterns of unfair competition activities.

Of Counsel:

Robert F. Zielinski
Law Offices of Robert F. Zielinski, LLC
1518 Walnut Street
Suite 1706
Philadelphia, PA  19103

Dated: July 15, 2009

/s/ Laura Hatcher
C. Malcolm Cochran, IV (#2377)
Anne S. Gaza (#4093)
Laura D. Hatcher ((#5098)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware  19801
302-651-7700
cochran@rlf.com
gaza@rlf.com
hatcher@rlf.com
*Attorneys for Plaintiffs Magna Entertainment Corp. and XpressBet, Inc.*